IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Cornelius, | ) | C/A No. 3:06-3215-MJP-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   This employment discrimination matter alleging retaliation is before the court pursuant to

28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendant's motion for summary

judgment.  (Docket Entry 105.)   Michael Cornelius, proceeding pro se, filed this action asserting

eleven causes of action against the City of Columbia ("City") and six City employees.  On July 19,

2007, the Honorable Matthew J. Perry, Jr., United States District Judge, issued an order dismissing

all claims against the individual employee defendants and finding the only remaining actions against

the City to be under the Age Discrimination in Employment Act ("ADEA") and any pendent state

causes of action.  (Docket Entry 70.)

   The defendant has moved for summary judgment.  (Docket Entry 105.)  By order of this

court filed May 12, 2008, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Cornelius

was advised of the summary judgment and dismissal procedures and the possible consequences if

he failed to respond adequately.  (Docket Entry 107.)  Cornelius timely filed a response (Docket

Entry 112) and the defendant replied (Docket Entry 114).  Additionally, Cornelius filed a sur-reply.

(Docket Entry 120.)  The motion is now before the court for a Report and Recommendation.  Having

carefully considered the parties' submissions, the court finds that the defendant's motion should be

granted.

## BACKGROUND

Cornelius's remaining claims center around his allegations that the City evaluated his performance negatively and placed him on a six-month probation period in retaliation for his filing an ADEA claim with the State Human Affairs Commission ("SHAC") in 2004.[1] (See Docket Entry 105-3 at 34.) In response to the negative evaluation and probation Cornelius filed a new charge with SHAC in March of 2006 alleging that these actions were in retaliation for the 2004 ADEA charge. He received a right-to-sue letter dated October 24, 2006.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence would effect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

---

[1]Cornelius withdrew his ADEA claim with SHAC in 2005. The parties dispute whether this withdrawal was truly voluntary. Cornelius asserts that he was "tricked" into withdrawing his administrative claim, while the City contends that the withdrawal was done in resolution of the charge. This dispute does not preclude summary judgment, however, since it is not material to the claims currently before the court—whether Cornelius experienced adverse employment action in retaliation for the filing of that charge. Cornelius filed a separate lawsuit in state court alleging that the withdrawal of his claim was not voluntarily. (Cornelius Dep., Docket Entry 105-3 at 28.) The state circuit court dismissed that action. (Id.)

Additionally, while Cornelius ultimately separated from employment with the City, his termination was the subject of a separate ADEA charge in 2007 and is the subject of a separate lawsuit currently pending before this court, C/A No. 08-02508-MJP-PJG.

While the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court found that:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the

employers' case and that properly may be considered on a motion for judgment as a matter of law.'" <u>Dennis</u>, 290 F.3d at 649 (quoting <u>Reeves</u>, 530 U.S. at 148-49)).

**B.    Burden Shifting in Employment Cases**

To obtain relief based upon alleged retaliation under the ADEA, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. <u>See</u> <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. If the defendant meets this burden, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was pretextual. <u>Reeves</u>, 530 U.S. at 147 (ADEA). Thus, once the employer produces affidavits offering a legitimate, nondiscriminatory reason for its action, the employee must prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that retaliation was the true reason for the adverse employment action. <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 217 (4th Cir. 2007) (Title VII).

**C.    Cornelius's Claims**

Based on the evidence presented here, Cornelius cannot meet the essential elements of a retaliation claim. First, he has not established that the City's action of evaluating his performance negatively and placing him on a probation period without reduction in pay was "adverse."[2] <u>Causey</u>, 162 F.3d at 803. Second, he has not refuted the City's proffered legitimate reasons for the

---

[2]While Cornelius advances five distinct "adverse employment actions" taken against him by the City, only the negative evaluation and probation period are at issue in this case, as those are the actions that he challenged in his March 4, 2006 charge filed with SHAC. (<u>See</u> Def.'s Mem. in Supp. Mot. Summ. J. at 3 n.2, Docket Entry 105-2; Charge of Discrimination dated Mar. 4, 2006, Docket Entry 105-3 at 34.) Some of the other employment actions Cornelius discusses appear to be the subject of other litigation.

employment actions of which Cornelius complains.  Additionally, any state law claims asserted by Cornelius are barred under state law.

### 1.     Negative Evaluation and Probation Period

The negative evaluation of Cornelius and the probation period are not "adverse employment actions."  Under the law in this circuit, "[a]n adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir. 2004) (internal quotations omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Criticism, including a negative performance evaluation, does not constitute adverse employment action.  See Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n.1 (N.D. Ill. 2003); Lewis v. Forest Pharmaceuticals, Inc., 217 F. Supp. 2d 638, 648 (D. Md. 2002) (holding that reprimands do not *per se* affect the terms or conditions of employment); see also Parsons v. Wynne, 221 Fed. Appx. 197, 198 (4th Cir. 2007) (unpublished) (stating that a negative employment evaluation and change in work schedule were not materially adverse employment actions).[3]  Thus, Cornelius cannot establish the second element of his *prima facie* case.

---

[3]Although Cornelius also contends that he suffered adverse employment action in that the City failed to promote him or denied him merit pay increases, these alleged actions are not the subject of the 2006 ADEA charge alleging retaliation.  Nonetheless, the court notes that the City gave a Cornelius a merit pay increase subsequent to the filing of the 2004 ADEA charge.

2.     **Causal Connection**

Nor has Cornelius established a causal connection between the filing of the 2004 ADEA charge and the city's actions of which he complains.  The City has established legitimate, nondiscriminatory reasons for Cornelius's evaluation and notice of probation which Cornelius has not adequately refuted.

Cornelius's supervisors at the time of his probation, Damon McDuffie and Harry Jivers, Jr., both attest that Cornelius was placed on probation with the intent that this would assist his job performance.  (McDuffie Aff. ¶ 6, Docket Entry 105-4 at 2-3; Jivers Aff. ¶ 5, Docket Entry 105-4 at 11.)  Specifically, McDuffie attests that in Cornelius's evaluation, he and Jivers rated "Cornelius competent or better in the majority of his job duties."  (McDuffie Aff. ¶ 5, Docket Entry 105-4.)  However, they noted that "Cornelius was less than competent in accepting work assignments from supervisors without refusal or constant complaint (6.A), using work time and approaching work in an organized manner (10.A), communicating effectively (11.A-11.C), adapting to changing situations (12.B), abusing break privileges and lunch hours (13.C) and self-discipline (14.A-14.C)."  (Id.)  Allison Baker, the Assistant City Manager and Director of the Parks and Recreation Department for the City of Columbia, attested that he was involved in the decision to place Cornelius on probation and that he believes Cornelius was "afforded multiple opportunities to perform and maintain his job."  (Baker Aff. ¶¶ 1, 3, 7, Docket Entry 105-4 at 49-50.)  All of these individuals deny any form of retaliation or discrimination against Cornelius.  (Id. ¶ 5; McDuffie Aff. ¶ 4, Docket Entry 105-4 at 2; Jivers Aff. ¶¶ 4, 6, Docket Entry 105-4 at 11.)  Further, upon recommendation by Cornelius's supervisors, he was ultimately removed from probation and suffered no financial loss.  (Baker Aff. ¶ 5, Docket Entry 105-4 at 49.)

Cornelius submits that he received several awards, such as employee of the month in 1998, 2001, and 2002, and received merit raises and satisfactory performance evaluations before he filed

the 2004 ADEA charge. (Docket Entry 112-3; 112-4.) Moses Cannon, a former supervisor of Cornelius,[4] attested that McDuffie was critical of Cornelius and that McDuffie and Jim Lawracy, another supervisor, treated Cornelius differently from all the other employees. (Cannon Aff., Docket Entry 112-18 at 3.) However, his affidavit does not indicate during what time period these actions occurred and does not mention or imply that any of these actions were in retaliation for Cornelius's 2004 ADEA claim. Melvin Murphy, another former supervisor of Cornelius,[5] submitted an affidavit explaining a miscommunication that resulted in Cornelius's suspension in June 2003, before the 2004 ADEA claim was filed; however, the affidavit largely pertains to Baker's treatment of Murphy and other employees and is not otherwise specific to Cornelius. (Murphy Aff., Docket Entry 112-18 at 31-32.) Further, Cornelius submitted numerous letters from co-workers that appear to be letters of support, excerpts from depositions, and entries from a personal log. (Letters, Docket Entry 112-20 at 21-31; Cannon Dep., Docket Entries 112-5 at 3, 112-7 at 4, 112-8 at 5, 112-11 at 8, 112-17 at 6, 112-18 at 5; Murphy Dep., Docket Entries 112-5 at 7, 112-7 at 7, 112-8 at 14, 112-16 at 3, 112-17 at 9, 112-18 at 18, 112-18 at 26, 112-18 at 34; Joyner Dep., Docket Entry 112-20 at 11; Personal Log Docket Entries112-8 at 2, 112-11 at 5-6.)

Cornelius has failed to carry his burden to establish a *prima facie* case of retaliation. Cornelius's proffered evidence and argument are insufficient to demonstrate that the City took adverse actions against him for filing an ADEA claim. In this case, the challenged evaluation and notice of probation was issued in November 2005, more than twenty-three months after Cornelius's

---

[4]It appears that Cannon was an employee of Parks and Recreation until September 6, 2004 and, further, was removed from his position of authority in September 2003 by Baker. (Cannon Aff., Docket Entry 112-18 at 2-3.)

[5]It appears that Murphy was an employee of Parks and Recreation until December 31, 2004 and, further, Baker removed his responsibilities and obligations with the Maintenance Section in September 2003 and later "worked him back in." (Murphy Aff., Docket Entry 112-18 at 31-32.)

age discrimination charge of January 2004. During this time, Cornelius received at least one favorable evaluation and a merit pay increase. (Cornelius Dep., Docket Entry 105-3 at 12.). Based on these facts, Cornelius cannot establish a causal connection between an age discrimination charge filed in January 2004 and actions taken in November 2005. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) ("[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity."); Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229, 232 (4th Cir. 2006) (unpublished) (finding four months between the protected activities and the adverse action too long to establish a causal connection by temporal proximity alone).

Even if Cornelius established a *prima facie* case, the City has produced evidence of legitimate, nondiscriminatory reasons for Cornelius's poor evaluation and placement on probation from the affidavits described above. Cornelius has not established that these affidavits are untrue or that retaliation was the true reason for the adverse employment action. Holland., 487 F.3d at 217. The affidavits, personal log entries, and the testimony and letters of his former co-workers do not establish any basis to refute the legitimate grounds for his evaluation and probation offered by the City. Moreover, where an employer uses established procedures and provides supporting written documentation, second-guessing by the employee or others not involved in the decision making process cannot establish pretext. See Thompson v. S.C. Dep't of Corr., C/A No. 3:06-1020, 2007 WL 1726530 (D.S.C. June 14, 2007). Accordingly, Cornelius cannot refute the legitimate reasons offered for the challenged employment actions.

## C.    South Carolina Law

As the court recommends that summary judgment be granted on Cornelius's employment actions, the court further recommends that supplemental jurisdiction not be exercised over Cornelius's state law claims. See 28 U.S.C. 1367(c). In any event, the court observes that

Cornelius's state law claims would fail under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et seq. and under the Workers' Compensation Act. As a public employer, the City is immune from liability arising from any alleged personal injury due to intentional conduct by employees who may have "desired" to cause Cornelius harm. S.C. Code Ann. § 15-78-60(17) (providing the exception to waiver of immunity for employee conduct which constitutes an intent to harm). Further, to the extent that Cornelius seeks to recover for emotional distress, South Carolina Workers' Compensation Act provides his exclusive remedy. See S.C. Code Ann. § 42-1-310.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendant's motion for summary judgment (Docket Entry 105) be granted.

Paige J. Gossett
_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 27, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).